IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA
     v.                                    Criminal No. 04-137
PIERRE JOHNSON

## MEMORANDUM OPINION

**October 28, 2005**

### I. Introduction

Defendant Pierre Johnson has filed a pretrial Motion to Suppress (Document No. 28), seeking to suppress a statement and physical evidence, a firearm that he threw while fleeing from City of Pittsburgh police on May 16, 2004. The Court conducted an evidentiary hearing on October 19, 2005.

After careful consideration of the respective proposed findings and conclusions, accompanying memoranda of law, and the testimony and evidence adduced at the evidentiary hearing, this Court finds that the warrantless arrest of Mr. Johnson was with probable cause and that the seizure of evidence was lawful under the Fourth Amendment to the United States Constitution. Accordingly, the Court will deny defendant's motion to suppress the firearm.

With regard to the statement made by the defendant as he was being taken to the Allegheny County Jail on the evening of his arrest, the government stipulates that it does not intend to submit or make use of this statement in any way. The motion to suppress the statement therefore is moot.

### II. Findings of Fact

1. At 4:23 a.m. on May 16, 2004, Pittsburgh Police officers Sean Rattigan and Robert Kavals attempted to conduct a traffic stop of a 1991 blue Chevrolet Lumina while on patrol.

**Testimony of Officer Sean Rattigan**

2. Officer Rattigan testified that he and his partner, Officer Kavals, observed a car make a right turn from Hamilton Avenue on to Fifth Avenue in Pittsburgh, without using its turn signal. The officers turned on the strobe lights, siren, and blinking headlights of their unmarked car to signal the Lumina to stop. The car slowed down but did not stop immediately. Rattigan observed the two men in the car turning their heads to each other repeatedly and assumed they were in discussion.

3. The car eventually came to a stop on Fifth Avenue. The officers opened the doors of their vehicle but did not step out, as they suspected the car would speed off. As soon as the officers opened their doors, the Lumina sped away.

4. The police gave chase to the Lumina, which ran through stop signs and red lights in its flight. As the Lumina attempted to make a turn onto East Hills Drive, it slid past the turn and went through a vacant parking lot. The Lumina spun out and the officers caught up with the vehicle.

5. The two men in the Lumina (defendant Johnson was in the front passenger seat) exited the car and began to flee on foot. Officer Rattigan exited his car, gave verbal commands for Johnson to stop and pursued on foot when Johnson did not oblige. Officer Kavals, meanwhile, pursued the Lumina's fleeing driver on foot in the opposite direction.

6. Officer Rattigan testified that during his pursuit of Johnson down East Hills Drive, he noticed a silver firearm in Johnson's right hand.

7. During this chase, Rattigan again gave verbal commands to stop, drop the weapon, and get on the ground, but defendant continued to run. As they ran through a construction site, Johnson threw the gun to the ground and continued to run for 50 or 100 yards.

Johnson tripped and fell to the ground, and Rattigan came up behind him and handcuffed him without a struggle.

8. A backup unit had arrived. Rattigan instructed one of the backup officers to take custody of Johnson, and Rattigan immediately went back and recovered the gun.

9. Officer Rattigan testified that the gun was a loaded semi-automatic with two rounds in the magazine and one in the chamber. It appearing to be in good operating condition. A check of the weapon disclosed that it was reported to have been stolen.

### Testimony of Officer Anthony Viscomi

10. Officer Viscomi was on duty and in uniform the night of the incident, May 16, 2004. He and his partner, Officer Watts, received a call around 4:23 a.m. and joined the pursuit of the Lumina as backup.

11. Officer Viscomi's testimony is consistent with that of Officer Rattigan in all material respects.

12. Viscomi testified that he pulled up to the scene just as Johnson fled the Lumina. Viscomi testified that he saw a shiny metallic firearm in Johnson's right hand as he fled. Viscomi initially ran to help Officer Kavals in apprehending the other suspect, and later joined Rattigan after Johnson had been handcuffed.

13. Viscomi held Johnson while Rattigan went back to recover the gun. Viscomi testified that the recovered gun looked like the gun he had seen Johnson running with. Officer Viscomi packaged the firearm and another firearm recovered from the car.

14. The testimony of Officer Rattigan and Viscomi was consistent in all relevant and material respects, and the Court finds said testimony to be credible. Officer Viscomi noticed the silver firearm in Johnson's hand before Officer Rattigan, who noticed it only

as or immediately before Johnson cast it away. Officer Rattigan testified that the area was dimly lit, except for the flashing lights and headlights of the police cars. Officer Viscomi testified that the light was bright when it shone off the silver gun, but this occurred when Johnson ran directly in front of Viscomi's patrol car; naturally the light would be bright on an object three feet distant from shining headlights.

### III.  Conclusions of Law

The parties agree that the police had probable cause to stop the vehicle and detain the driver of the vehicle. The sole issue before the Court is whether the firearm can be suppressed as fruits of an unconstitutional seizure or arrest.

The Fourth Amendment to the United States Constitution protects the "rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U. S. Const. amend. 4. The seizure of Mr. Johnson and the gun were conducted without a warrant, and the burden of proof is on the government to prove that the seizure was constitutionally justified. Police may conduct an investigative stop when there is reasonable suspicion based upon specific and articulable facts "that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). The existence of reasonable suspicion must be based upon a totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989). Flight alone is not enough to establish reasonable suspicion, although it is a factor to be taken into consideration. Illinois v. Wardlow, 528 U.S. 119, 125 (2000).

Here, however, while it appears the police officers had reasonable suspicion to chase defendant after he began to run from the vehicle that they had been pursuing, the Court need not reach that issue because, at the threshold, Mr. Johnson was not "seized" in the legal sense at the point in time when he threw away the gun. A seizure of a person occurs in one of two situations: (1) when officers apply physical force to the person being seized, or (2) when force is absent,

where officers make a show of authority *and the person seized submits to the show of police authority.* See California v. Hodari, 499 U.S. 621, 626 (1991); United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000). In Hodari, the defendant fled from the police, threw a rock of cocaine away, and was tackled by the pursuing officer a moment later. Id. at 623. The United States Supreme Court ruled that the discarded cocaine was not gained as a result of a seizure within the meaning of the Fourth Amendment, because Hodari was not seized until he was actually tackled by the officer. Id. at 626.

Similarly here, recovery of the gun was not the fruit of an unlawful seizure, as it was discarded by defendant before he was seized. United States v. Coggins, 986 F.2d 651, 653-54 (3d Cir. 1993) ("Under Hodari, while . . . a seizure requires a show of authority objectively sufficient to convince the reasonable person he is not free to leave, it also requires that the suspect actually submit to the show of authority."). Officer Rattigan did not catch up to Johnson, and therefore did not execute a seizure, until after Johnson had thrown away the firearm. Once he saw defendant throw the weapon, Officer Rattigan had probable cause to make the arrest. Because there was no seizure prior to seeing the firearm thrown, there is no need to make the "reasonable suspicion" analysis.

The evidence of the firearm was obtained constitutionally; the firearm was abandoned by Mr. Johnson and lawfully recovered by the police. The defendant's motion to suppress will be denied, and an appropriate order entered.

                                               s/ Arthur J. Schwab
                                               Arthur J. Schwab
                                               United States District Judge

cc: all counsel of record